CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
TRACY M. O'STEEN, ESQ.
Nevada Bar No. 10949
CLARK HILL PLC
3800 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone:     (702) 862-8300
Facsimile:     (702) 862-8400
CCarlyon@ClarkHill.com
TOSteen@ClarkHill.com
*[Proposed] Counsel for Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| In re | Lead Case No.: BK-19-50104-btb |
|---|---|
| DOG BLUE PROPERTIES, LLC | Chapter 11 |

DOG BLUE PROPERTIES, LLC
                            Debtor.

Proposed Joint Administration with:

| 19-50102-btb | Double Jump, Inc. |
|---|---|
| 19-50103-btb | Dora Dog Properties, LLC |
| 19-50105-btb | Brandy Boy Properties, LLC |
| 19-50106-btb | 475 Channel Road, LLC |
| 19-50108-btb | Park Road, LLC |
| 19-50109-btb | 140 Mason Circle, LLC |
| 19-50130-btb | DC Solar Solutions, Inc. |
| 19-50131-btb | DC Solar Distribution, Inc. |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE RETENTION OF GLASSRATNER ADVISORY & CAPITAL GROUP LLC TO PROVIDE CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL, (II) DESIGNATING SETH R. FREEMAN AS DEBTORS' CHIEF RESTRUCTURING OFFICER EFFECTIVE AS OF THE PETITION DATE, (III) SETTING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF**

Hearing Date: OST Requested
Hearing Time: OST Requested

Double Jump, Inc., along with certain of its affiliates, the above captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their proposed counsel, the law firm of Clark Hill PLLC, hereby submit this Emergency Motion (the "Motion") for entry of Interim

and Final Orders (i) Approving the Retention and Employment of GlassRatner Advisory & Capital Group LLC ("GlassRatner") to Provide the Debtors with a Chief Restructuring Officer ("CRO") and Certain Additional Personnel the "GlassRatner Personnel"), (ii) Designating Seth R. Freeman, CIRA, CTP as CRO Effective as of the Petition Date, pursuant to that certain engagement letter agreement by and between Debtors and GlassRatner, of which a true and correct copy is attached hereto as Exhibit 1 (the "Engagement Agreement"), (iii) Setting a Final Hearing, and (iv) Granting Related Relief.

This Motion is made and based upon the following memorandum of points and authorities, sections 105and 363(b)  of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the *Omnibus Declaration of Seth R. Freeman in Support of First Day Motions* [ECF No. 12] (the "First Day Declaration") on file herein, and the Declaration of Seth R. Freeman, CIRA, CTP in Support of Debtors' Application (the "Freeman Declaration") filed concurrently herewith.

Respectfully submitted this 4th day of February, 2019.

CLARK HILL PLC

*/s/ Tracy M. O'Steen, Esq.*
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
TRACY M. O'STEEN, ESQ.
Nevada Bar No. 10949
3800 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
*[Proposed] Counsel for Debtors and Debtors in Possession*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### RELIEF REQUESTED

1.      By this Application, the Debtors seek entry of an order pursuant to sections 105 and 363(b) of the Bankruptcy Code (a) authorizing (i) the retention of GlassRatner to provide the Debtors with a CRO as well as additional GlassRatner Personnel to assist the CRO in the performance of his duties, and (ii) designating Seth R. Freeman as the Debtors' CRO (and together

with the GlassRatner Personnel, the "Engagement Personnel"), effective as of the Petition Date, and (b) granting related relief.

## II.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief requested herein are Sections 105 and 363(b) of the Bankruptcy Code, and Bankruptcy Rules 2014(a) and 2016.

5.      Debtors consent to entry of final relief by the bankruptcy court.

## III.

### RELEVANT BACKGROUND

6.      On January 30, 2019 (the "Petition Date"), Holdings and the Real Estate Debtors (as defined below) each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code, and on February 3, 2019, DC Solar Solutions, Inc. and DC Solar Distributions, Inc. each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors have requested that the Chapter 11 Cases be jointly administered.

7.      The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.      To date, no creditors' committee has been appointed in these Chapter 11 Cases by the Office of the United States Trustee for the District of Nevada (the "United States Trustee"). No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases.

9.      DC Solar Solutions, Inc., DC Solar Distribution, Inc., and DC Solar Freedom, Inc.[1] (together, the "DC Solar" companies or the "Company") has become the largest manufacturer of

---

[1] The Debtors in the above-captioned cases anticipate that Freedom will file its own chapter 11 case promptly, and will seek joint administration of its chapter 11 case together with the above-captioned cases.

mobile solar generators over the last decade. The Company designs, manufactures, and distributes mobile solar generators, mobile solar electric vehicle chargers, mobile solar light towers, and mobile solar power stations to private enterprises, municipalities, and universities. The Company was founded in 2009, and today has deployed its units across the United States.

10.     In addition to DC Solar Solutions, Inc. and DC Solar Distributions, Inc., the Debtors are comprised of Double Jump, Inc., which holds 100% of the stock in DC Solar Solutions, Inc. and DC Solar Distribution, Inc., as well as six limited-liability companies which primarily hold real estate assets (both commercial and residential) for rent or lease, being Dog Blue Properties, LLC; Dora Dog Properties LLC; Brandy Boy Properties, LLC; 475 Channel Road, LLC; 140 Mason Circle LLC; and Park Road LLC (the "Real Estate Debtors"). The assets of the Real Estate Debtors will be pledged as collateral in connection with the proposed DIP Financing described in the First Day Declaration.

11.     As set forth in the First Day Declaration, on December 18, 2018, the federal government seized funds from and froze all bank accounts associated with the DC Solar companies, allegedly in connection with a purported "investment fraud" perpetrated by the Company. On the same day, agents from the FBI and the IRS executed sweeping search and/or seizure warrants of the DC Solar business headquarters located in Benicia, California. Agents seized hundreds of items essential for the Company to conduct and operate its ongoing businesses, including, but not limited to, computer servers, computers, and hard copy files containing corporate books and records, investment agreements, lease agreements, vendor agreements, communications with investors and customers, and invoices for insurance and utility providers. Left without any liquid assets to fund the Company's business or basic communications and record-keeping infrastructure, the Company was forced to shut down and lay off its entire workforce the week before Christmas. Approximately 100 employees were laid off, and the Company was unable to pay wages owed to those employees. Following the seizure, the Company has continued to receive strong support from its employees, its customers, its partners, and its investors. Buoyed by the support of its key constituencies, the Company is securing debtor-in-possession financing and commenced these Chapter 11 Cases in order to reopen its business operations so that it may continue to serve its

1   customers and other stakeholders, compensate its employees, and continue to deliver and develop

2   its best-in-class products and services for the benefit of all constituencies.

3           12.     In order to alleviate any concerns with regard to prior management, the Debtors

4   have engaged an experienced independent restructuring advisor, Seth R. Freeman of GlassRatner,

5   to act as the Corporate Restructuring Officer and lead the Debtors through the reorganization

6   process. Approval of GlassRatner's retention and employment of Seth R. Freeman as CRO is the

7   subject of the current Motion. DC Solar companies and Double Jump, Inc. have also engaged new

8   independent directors to aid with the reorganization process.

9           13.     Additional factual background information regarding the Debtors, including their

10  business operations, their corporate and capital structure, and the events leading to these Chapter 11

11  Cases, is set forth in detail in the First Day Declaration.

12                                               **IV.**

13             **RETENTION AND QUALIFICATIONS OF GLASSRATNER & SETH R. FREEMAN**

14          14.     GlassRatner was retained by the Debtors on January 24, 2019, as the Debtors' chief

15  restructuring officer, in order to assist the Debtors with evaluating their restructuring options and

16  otherwise help maximize the value of the Debtors' business and estates for the benefit of their

17  constituents.

18          15.     In consideration of the size and complexity of their businesses, as well as the

19  exigencies of the circumstances, the Debtors require the assistance of a qualified and experienced

20  CRO with the resources, capabilities, and experience of GlassRatner, Mr. Freeman and the

21  Engagement Personnel. GlassRatner performs critical services that complement the services

22  provided by the Debtors' other professionals.

23          16.     The Debtors believe that GlassRatner, Mr. Freeman and the Engagement Personnel

24  are well qualified to provide restructuring management services that will assist and enhance the

25  Debtors' efforts to maximize the value of their estates. GlassRatner has a wealth of experience in

26  providing restructuring advisory services, and enjoys an excellent reputation in the restructuring

27  community for services it has rendered on behalf of debtors and creditors throughout the United

28  States.

17.     GlassRatner's professionals have assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to the Debtors' chapter 11 cases.

18.     Seth R. Freeman, CIRA, CTP, is the Senior Managing Director of GlassRatner's San Francisco office.  Mr. Freeman is a bankruptcy, insolvency and restructuring consultant, crisis and turnaround manager and asset manager with over 30 years of diverse consulting experience including financial advisory, operational and financial restructuring, controlled wind-downs, transaction management, arranging new financing, fiduciary, litigation support; and cross-border due diligence, insolvency and debt resolution, market-entry strategies, compliance, fraud investigation and recovery and complex dispute negotiation.  His practice also includes serving as independent advisor to significant investors and directors of companies undergoing change.  Mr. Freeman is a Certified Insolvency & Restructuring Advisor and a Certified Turnaround Professional.  He is a Director of the Bay Area Bankruptcy Forum and serves on the Turnaround Management Association CTP  Professional Education Committee.  Mr. Freeman's professional firm resume is attached hereto as Exhibit 2.

19.     The CRO shall be an officer of Company and shall have the duties similar to that of a Chief Executive Officer including, but not limited to:  (a) assisting in all aspects of the Company's business activities and operations, including budgeting, cash management and financial management;  (b) negotiations regarding the relationship with the Company's lenders: (c) negotiations with vendors, customers and other creditors: (d) hiring and terminating of employees of the Company (to the extent applicable):  (e) review of daily operating activity: (f) evaluating liquidity options including restructuring, refinancing and reorganizing; (g) reviewing purchases and expenses, and (h) acting as the Company representative in court hearings as appropriate.

## V.

### SCOPE OF EMPLOYMENT

20.     Subject to Court approval, the Debtors propose to retain GlassRatner to make available to the Debtors the Engagement Personnel, on the terms and conditions provided in the Engagement Agreement, except as otherwise set forth herein or in any order granting this

1    Application.  The terms and conditions of the Engagement Agreement were negotiated between the

2    Debtors and GlassRatner at arm's-length and reflect the parties' mutual agreement as to the efforts

3    that will be required for this engagement.  Further, GlassRatner was retained by Double Jump, Inc.,

4    Dora Dog Properties, LLC, Dog Blue Properties, LLC, 475 Channel Road, LLC, Park Road, LLC,

5    140 Mason Circle, LLC, DC Solar Solutions, Inc., DC Solar Distribution, Inc., and DC Solar

6    Freedom, Inc.  and the terms and conditions of the Engagement Agreement are equally applicable to

7    each.

8          21.    Generally, the Engagement Personnel shall perform activities and services to

9    oversee the Debtors' chapter 11 process and assist with maximizing the value of the Debtors'

10   estates.  The CRO shall report to the Debtors' board of directors.  In addition to the ordinary course

11   duties of a CRO, the Engagement Personnel may also support the CRO and the Debtors on the

12   following:  Assist the Debtors with routine accounting, financial analysis and US Trustee reporting;

13   assist in the preparation of marketing and pricing analysis and projections; assist in obtaining,

14   arranging and negotiating Debtor in Possession financing; perform valuations; assist with matters

15   involving the Unsecured Creditors Committee;   assist and advise on the development and

16   presentation of the Plan of Reorganization; review the available documentation relating to the

17   investigative issues and assist in the identification of additional information/documentation to be

18   obtained; prepare reports, with supporting documentation, summarizing findings and setting out

19   opinions in a manner that is easily understood and representative of the events; and other services

20   requested by the Debtor.  In addition, GlassRatner will take responsibility for preparation of the

21   Debtors' Schedules and Statement of Financial Affairs.

22          22.    In general, and particularly in light of recent events impacting the Debtors, such

23   professional services are necessary to the Debtors' efforts to maximize value and to the ongoing

24   operation and management of the Debtors' businesses while they are in chapter 11.

25          23.    The CRO will consult with the Board of Directors in connection with Engagement

26   Personnel and that such resources are necessary and not duplicative of the services being provided

27   by other employees or professionals.

28

# VI.

## DISINTERESTEDNESS

24.     To the best of the Debtors' knowledge, and except to the extent disclosed herein and in the Freeman Declaration, GlassRatner: (a) has no connection with the Debtors (other than through the retention described herein), their creditors or other parties in interest, the attorneys or accountants of the foregoing, the Office of the United States Trustee for the District of Nevada (the "U.S. Trustee") or any person employed in the Office of the U.S. Trustee; (b) does not hold any interest adverse to the Debtors' estates; and (c) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code.

25.     Although the Debtors respectfully submit that GlassRatner's employment is not governed by section 327 of the Bankruptcy Code, GlassRatner ran a conflicts check and to the best of its knowledge, does not have connections with creditors, equity security holders, or other parties in interest related to these Chapter 11 Cases. GlassRatner does not represent an interest materially adverse to the Debtors' estates and does not have a conflict of interest regarding the Debtors or these Chapter 11 Cases.

26.     To the extent that any new facts or relationships bearing on the matters described herein are discovered or arise, GlassRatner will promptly file supplemental disclosures.

# VII.

## PROFESSIONAL COMPENSATION, EXPENSE REIMBURSEMENT AND INDEMNIFICATION

27.     GlassRatner's acceptance of this engagement is conditioned upon its ability to be retained and compensated in accordance with its customary terms and conditions and in accordance with the Engagement Agreement (all such proposed terms, the "Fee and Expense Structure"), described more fully below and in the Engagement Agreement, to which the Debtors respectfully refer the Court.

28.     GlassRatner and Mr. Freeman were retained by the Debtors on January 24, 2019 to serve as their CRO, at an hourly rate of $450 per hour for Mr. Freeman. The other Engagement Personnel will provide services at their standard hourly rates ranging from $195 to $625 an hour at the direction of the CRO.

29.     In addition to compensation for professional services rendered by the Engagement team, GlassRatner will seek reimbursement for reasonable and necessary out-of-pocket expenses incurred in connection with these Chapter 11 Cases, including reasonable fees and expenses of its counsel for legal advice in connection with performing it duties in light of certain matters unique to these Chapter 11 Cases, and the enforcement of the Engagement Agreement, if necessary.

30.     As more fully described in the Engagement Agreement, the Debtors seek authority to indemnify GlassRatner and Mr. Freeman to the same extent the Debtors indemnify their officers or directors. Specifically, the Debtors have agreed to indemnify and hold harmless GlassRatner, its shareholders, officers, employees, agents, representatives, and subcontractors against any and all losses, claims, damages, liabilities, penalties, obligations, and expenses, including reasonable legal fees and expenses, based upon or arising out of GlassRatner's performance of services in these Chapter 11 Cases, except where any claims or losses are due to willful misconduct or gross negligence, as determined by a final judgment from which all appeals have been exhausted.

## VIII.

### FEES AND REPORTING

31.     As set forth in the Freeman Declaration, prior to the bankruptcy filing, GlassRatner received total funds of $375,000 from the Debtors. For services rendered by GlasRatner prior to the filing of the Debtors' petitions for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"), Glass Ratner charged the sum of $83,911.94, which sum was "drawn down" from the retainer funds, leaving a retainer on hand of $291,088.06.  GlassRatner intends to apply the remaining retainer to services rendered and expenses incurred subsequent to the Petition Date that are approved by the Court.

32.     The Engagement Agreement further contemplates that  GlassRatner's retention and Seth R. Freeman's appointment as CRO is subject to approval of the Bankruptcy Court with the payment of monthly fees in accordance with local rules, whether subject to an interim fee application or the submission to the court of itemized monthly fee statements.

33.     Subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Fee Guidelines, and the Orders, the Debtors propose to compensate GlassRatner for

1    services rendered at its customary hourly rates that are in effect from time to time, as set forth in the

2    Freeman Declaration, and to reimburse GlassRatner according to its customary reimbursement

3    policies. The Debtors respectfully submit that GlassRatner's rates and policies stated in the

4    Freeman Declaration are reasonable.

5        34.    The Debtors have also moved the Court for authorization to retain Clark Hill PLC

6    as bankruptcy counsel and expect to move for the employment of Skadden, Arps, Slate, Meagher &

7    Flom LLP as special litigation counsel as well. However, the Engagement Personnel will

8    complement, and not duplicate, the services to be rendered by these and any other professionals

9    retained in these Chapter 11 Cases. GlassRatner will work cooperatively with all of the Debtors'

10    other professionals to ensure that value is maximized and that services are not duplicated.

11                                    **IX**

12                            **LEGAL AUTHORITY**

13        35.    The Debtors seek to employ and retain GlassRatner and appoint Mr. Freeman as

14    CRO pursuant to sections 363 and 105(a) of the Bankruptcy Code, effective as of the Petition Date.

15        36.    Debtors seek approval to employ GlassRatner under section 363(b)(1) of the

16    Bankruptcy Code which provides, in relevant part, that "[t]he trustee, after notice and a hearing,

17    may use, sell, or lease, other than in the ordinary course of business, property of the estate."

18    Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order,

19    process, or judgment that is necessary or appropriate to carry out the provisions of this title."

20        37.    Under applicable case law in this and other jurisdictions, a debtor's proposed use of

21    its assets pursuant to section 363(b) of the Bankruptcy Code, other than in the ordinary course of

22    business, is authorized when the debtor demonstrates a sound business purpose for the intended use.

23    *See Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines,*

24    *Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[I]mplicit in § 363(b) is the further requirement of

25    justifying the proposed transaction. That is, for the debtor-in-possession or trustee to satisfy its

26    fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business

27    justification for using, selling, or leasing the property outside the ordinary course of business")

28    (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)); *see also In re ASARCO, L.L.C.*, 650

1    F.3d 593, 601 (5th Cir. 2011) ("The business judgment standard in section 363 is flexible and

2    encourages discretion"); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999)

3    (use of assets outside the ordinary course of business permitted if "sound business purpose justifies

4    such actions"); *Comm. of Asbestos-Related Litigants v. Johns- Manville Corp. (In re Johns-*

5    *Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a

6    reasonable basis for its business decisions (as distinct from a decision made arbitrarily or

7    capriciously), courts will generally not entertain objections to the debtor's conduct").

8        38.    Here, the retention of a CRO is necessary and appropriate under the circumstances.

9    The Debtors' back office is understaffed and lacks both the manpower and experience to handle the

10    extensive administrative matters required in a chapter 11 case, while at the same time operating the

11    business and maximizing value. An experienced professional in financial, operational, and

12    bankruptcy-specific matters is a necessary and integral part of maximizing value and ensuring

13    efficiency and compliance with the Bankruptcy Code, the Bankruptcy Rules and the various

14    bankruptcy reporting obligations imposed on debtors in possession.

15        39.    Bankruptcy courts have analyzed on numerous occasions the propriety of a debtor's

16    employment of chief restructuring officers, interim corporate officers and crisis managers under

17    Section 363 of the Bankruptcy Court and have determined that it is an appropriate exercise of the

18    debtor's business judgment to employ such entities under Section 363.[2]

19        40.    The decision to retain GlassRatner and employ Mr. Freeman as CRO is a sound

20    _____

21    [2] *See, In re Westcliff Medical Laboratories, Inc.*, Case No. 10-16743 (Bankr. C.D. Cal. June 25, 2010); *In re Fatburger Restaurants of California, Inc., et al.*, Case No. 09-13965 (Bankr. C.D. Cal. Feb. 16, 2011); *In re Fairfield Residential LLC*, Case No. 09-14378 (Bankr. D. Del Jan 13, 2010); *In re Motor Coach Industries International, Inc.*, Case No. 08-12136 (Bankr. D. Del Oct. 15, 2008) (approving retention of chief restructuring officer and crisis managers); *In re Pappas Telecasting, Inc.*, Case No. 08-10916 (Bankr. D. Del June 26, 2008); *In re Linens Holding Co.*, Case No. 08-10832 (CSS) (Bankr. D. Del May 28, 2008); *In re Hoop Holdings, LLC*, Case No. 08-10544 (BLS) (Bankr. D. Del Apr. 22, 2008); *In re Leiner Health Products, Inc.*, Case No. 08-10446 (KJC) (Bankr. D. Del. Apr. 8, 2008); *In re TOUSA, Inc.*, Case No. 08-10928 (Bankr. S.D. Fla. Mar. 26, 2008); *In re American Home Mortgage Holdings, Inc.*, Case No. 07-11047 (Bankr. D. Del. Sept. 5, 2007); *In re Calpine Corp.*, Case No. 05-60200 (Bankr. S.D.N.Y. Jan 17, 2007); *In re Tokheim Corp.*, Case No. 02-13437 (RJN) (Bankr. D. Del. Feb. 25, 2003); *In re The Holliston Mill, Inc.*, Case No. 07-10687 (MFW) (Bankr. D. Del. June 6, 2007); *In re Sea Containers Ltd.*, Case No. 06-11156 (KJC) (Bankr. D. Del. May 8, 2007); *In re Adva-Lite, Inc.*, Case No. 07-10264 (KJC) (Bankr. D. Del. Mar. 16, 2007); *In re Global Home Products, LLC*, Case No. 06-10340 (KG) (Bankr. D. Del. May 4, 2006).

22

23

24

25

26

27

28

exercise of the Debtors' business judgment. First, Mr. Freeman has extensive experience as an advisor for many troubled companies and has extensive experience in chapter 11 cases. The Debtors believe that Mr. Freeman, in his capacity as CRO, and the GlassRatner Personnel, will provide services that will benefit the Debtors' estates and creditors.   In addition, GlassRatner has extensive experience in providing restructuring consulting services in chapter 11 proceedings and enjoys an excellent reputation as a restructuring firm throughout the United States.

41.    Second, the economic terms of GlassRatner's retention are fair, reasonable, and beneficial to the Debtors' estates, and were negotiated at arm's-length. The Debtors believe that the Fee and Expense Structure is comparable to those generally charged by restructuring advisors of similar stature to GlassRatner for similar engagements. Given the numerous issues that GlassRatner may be required to address in the performance of its services hereunder, and the market prices for GlassRatner's services for engagements of this nature both in and out of court contexts, the Debtors believe that the Fee and Expense Structure is in line with market compensation for similar services and is fair and reasonable.

42.    For the reasons set forth herein, the Debtors respectfully submit that the retention of GlassRatner and the employment of Mr. Freeman as the Debtors' CRO is a sound exercise of the Debtors' business judgment and in the best interests of all parties in interest in these Chapter 11 Cases. The Debtors further believe that GlassRatner is well qualified and equipped to represent the Debtors in a cost-effective, efficient, and timely manner. Accordingly, the Debtors respectfully request that the Court authorize the Debtors to retain GlassRatner to provide the Debtors with a CRO, as well as any additional and necessary GlassRatner Personnel, and to designate Mr. Freeman as the CRO to the Debtors, effective as of the Petition Date, all pursuant to sections 105 and 363 of the Bankruptcy Code.

43.    Accordingly, the Debtors respectfully submit that the retention of GlassRatner, and the designation of Mr. Freeman as the Debtors' CRO on the terms set forth herein and in the Engagement Agreement, is necessary, appropriate, and in the best interest of the Debtors' estates, creditors, and other parties in interest and should be approved.

## X.

### CAUSE EXISTS TO WAIVE THE STAY IMPOSED UNDER RULE 6004(H) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

44.     Pursuant to Rule 6004(h) of the Bankruptcy Rules, "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). The Debtors respectfully submit that, to the extent that Bankruptcy Rule 6004(h) applies to the Debtors' proposed retention of Mr. Feeman as CRO in these Chapter 11 Cases, cause exists to waive the 14-day stay imposed by Rule 6004(h). A 14-day stay of an order authorizing the Debtors' retention of Mr. Freeman as CRO will serve only to delay, unnecessarily, the administration of these cases, to the detriment of the Debtors' creditors.

## XI.

### NOTICE

45.     Notice of this Motion shall be given to (a) the Office of the United States Trustee; (b) the holders of the 20 largest unsecured claims against the Debtors in each of the Chapter 11 Cases; (c) the United States Attorney for the Eastern District of California, Attn: McGregor W. Scott; (d) the Debtors' proposed post-petition debtor in possession lender; (e) the Internal Revenue Service; and (f) any such other party entitled to notice pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice need be provided.

*[Remainder of Page intentionally left blank]*

## XII.

### CONCLUSION

Based on the foregoing, Debtors respectfully request that the Court:  (1) Grant the Motion on an Interim basis and enter an order, substantially in the form attached hereto as <u>Exhibit 3</u>; (2) Set a final hearing on the Motion; and (3) For such further relief as the Court deems just and proper.

Respectfully submitted this 4th day of February, 2019.

CLARK HILL PLC
*/s/ Tracy M. O'Steen, Esq.*
CANDACE C. CARLYON, ESQ.  (2666)
TRACY M. O'STEEN, ESQ. (10949)
3800 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
*[Proposed] Counsel for Debtors in Possession*

# EXHIBIT 1

# EXHIBIT 1



**GLASSRATNER**
a B. Riley Financial company
WWW.GLASSRATNER.COM

### CONFIDENTIAL

### CHIEF RESTRUCTURING OFFICER AND FINANCIAL ADVISOR ENGAGEMENT LETTER AGREEMENT

January 24, 2018

Mr. Dan Briggs, CEO
**DC Solar Solutions, Inc.**
4901 Park Road
Benicia, CA 94510

RE:     **Engagement of GlassRatner Advisory & Capital Group, LLC as the Chief Restructuring Officer and Financial Advisor to DC Solar Solutions, Inc. and Affiliates (collectively, the "Company")**

Dear Mr. Briggs,

This Engagement Letter Agreement confirms our understanding that Company, through its board of director(s) (the "Board") is engaging GlassRatner Advisory & Capital Group, LLC as Chief Restructuring Officer ("CRO") and Financial Advisor and sets forth the terms and conditions of the engagement including the scope of services to be performed and the basis of compensation for those services.  Upon execution of this letter by each of the parties below and approval of the Bankruptcy Court, this letter will constitute an agreement (the "Agreement") between Company and its Board and GlassRatner.

1.     <u>Description of Services</u>

A.     <u>Officers</u>.  In connection with this engagement, GlassRatner shall make available to the Company Seth R. Freeman to serve as the Chief Restructuring Officer of the Company (the "CRO") at an hourly rate of $450. Other GlassRatner personnel will provide services at their standard hourly rates ranging from $625 to $195 at the direction of the CRO.

B.     <u>Duties and Powers</u>.

(i)     The CRO shall be an officer of Company and shall have duties typical of a Chief Executive engaged in restructuring activities, but not limited to: (a) assisting in all aspects of the Company's business activities and operations, including budgeting, cash management



CONFIDENTIAL

Mr. Dan Briggs, CEO
**DC Solar Solutions, Inc. - GlassRatner**
January 24, 2019
Page | 2

and financial management; (b) negotiations regarding the relationship with the Company's lenders: (c) negotiations with vendors, customers and other creditors: (d) hiring and terminating of employees of the Company (to the extent applicable) in consultation with the board: (e) review of daily operating activity: (f) evaluating liquidity options including restructuring, refinancing and reorganizing; (g) reviewing purchases and expenses, and (h) acting as the Company representative in court hearings as appropriate.

(ii)   The CRO understands that the Board has engaged the law firm of Skadden, Arps, Slate, Meagher & Flom LLP as its counsel ("Counsel"), and that the powers of the CRO do not include the power to terminate Counsel.  Only the Board can vote to terminate or replace its Counsel, however, the CRO may make recommendations to the Board regarding Counsel.

(iii)  The CRO shall assist the Company in evaluating and executing restructuring alternatives.

(iv)   The CRO shall assist the Company and its Counsel in connection with resolution of matters related to the U.S. Department of Justice, the Securities and Exchange Commission and Internal Revenue Service.

(v)    Analyze Company's operations and financial position and provide recommendations with respect to financial restructuring or disposition of assets, in conjunction with the Director(s);

(vi)   On behalf of Company's Board, evaluate strategic alternatives to maximize the value of the Company's assets, enterprise or operations and, as necessary, to develop a plan of reorganization or liquidation, in conjunction with the Director (s);

(vii)  Serve as a principal point of contact for the Company and its creditors with respect to financial and operational matters;

(viii) If a decision is made by the Board and CRO to initiate a bankruptcy proceeding:

   a. To provide information and analyses for inclusion in Bankruptcy Court filings and testimony related thereto;

   b. Upon request and under the supervision of Company's Counsel, to support negotiations with the various creditor and other constituents in the Bankruptcy Case;



<u>CONFIDENTIAL</u>

Mr. Dan Briggs, CEO
**DC Solar Solutions, Inc. - GlassRatner**
January 24, 2019
Page | 3

    c.  Supervise GlassRatner's preparation of any and all monthly financial reports as required of a debtor-in-possession and other financial reporting required by the Office of the United States Trustee on behalf of the Debtor;

    d.  Coordinate all activities on behalf of the Debtor in connection with any refinancing, capital raising and sale process for the Debtor, in conjunction with the Board.

C.    <u>Reporting</u>.  The CRO shall report to one or more Directors, provided, however, that the CRO shall not require the consent or approval of the Board to take action (or elect not to take action) in such officer's capacity as CRO absent order of the Bankruptcy Court; provided further, however, the CRO shall routinely consult and provide the Board with the status of actions which have been initiated and/or actions which are being planned but not yet initiated.

D.    <u>Employment by GlassRatner</u>.  The CRO will continue to be employed by GlassRatner and while rendering services to the Company continue to work with other personnel at GlassRatner in connection with other unrelated matters, which will not unduly interfere with services pursuant to this engagement.  With respect to the Company, however, the CRO shall operate pursuant to the terms of this Agreement.

E.    <u>Projections; Reliance; Limitation of Duties</u>.  You understand that the services to be rendered by the CRO may include the preparation of projections and other forward-looking statements, and that numerous factors can affect the actual results of Company's operations, which may materially and adversely differ from those projections and other forward-looking statements.  In addition, the CRO will be relying on information provided by other members of Company's management in the preparation of those projections and other forward-looking statements.  Neither the CRO nor GlassRatner makes any representation or guarantee that the business will achieve or not achieve a particular result.  Further, that any restructuring plan formulated for the Company, or selected by the CRO, will be more successful than all other possible restructuring alternatives or that any proposed restructuring alternative will be accepted by any of the Company's creditors and other constituents.



CONFIDENTIAL

Mr. Dan Briggs, CEO
**DC Solar Solutions, Inc. - GlassRatner**
January 24, 2019
Page | 4

2.   Compensation

    A.   GlassRatner will be paid by the Company for the services of the CRO at $450 per hour for the services of Seth R. Freeman.  Other GlassRatner staff used will have rates that range from $625 per hour to $350 per hour.

    B.   In cases such as these, GlassRatner requires a retainer of $200,000 received prior to commencement of performance of services.

    C.   Further, Company and the Board agree that a minimum of _____ per month will be included as an approved expense in any budgets for post-petition financing and the use of cash collateral.

    D.   To the extent GlassRatner provides services prior to Company operating under Chapter 11 bankruptcy, Company and the Board agree to the following payment terms:

        a.   Invoices for services performed will be prepared on a weekly basis and submitted each Monday for the previous week's work;

        b.   The weekly invoice will be due and payable by Wednesday of each week. GlassRatner reserves the right to terminate services in the event Company fails to make timely payment.

        c.   These payment terms will continue until the Company files a Chapter 11 bankruptcy petition.

    F.   Should the Company initiate a Chapter 11 proceeding, Seth R. Freeman's retention as CRO and GlassRatner as his financial advisor will be subject to approval of the Bankruptcy Court with the payment of monthly fees in accordance with local rules, whether subject to an interim fee application or the submission to the court of itemized monthly fee statements.

    G.   If GlassRatner provides avoidable transfer analysis, evaluation of potential causes of action, valuation, litigation support consulting or forensic accounting, those services will be billed in addition to CRO services, albeit at the same hourly rates.

    H.   GlassRatner will be reimbursed by the Company for the reasonable out-of-pocket expenses, including travel expenses of the CRO and necessary staff.

    I.   GlassRatner will be reimbursed by the Company for its reasonable legal fees incurred in connection with this Engagement, if necessary.  GlassRatner agrees to consult with the Board in advance of retaining legal counsel in connection with the Engagement.



CONFIDENTIAL

Mr. Dan Briggs, CEO
**DC Solar Solutions, Inc. - GlassRatner**
January 24, 2019
Page | 5

3.    <u>Termination</u>

Subject to Board approval, the engagement will commence effective with the execution of the Agreement and approval of the Bankruptcy Court and can be terminated by either party with 30 days written notice. Any professional services provided during the period after notice but before the end of the term are the liability of the Company.

4.    <u>No Audit, Duty to Update</u>

It is understood that the CRO and GlassRatner are not being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body. They are entitled to rely on the accuracy and validity of the data disclosed to them or supplied to them by manager employees and representatives of the Company. The CRO and GlassRatner are under no obligation to update data submitted to them or review any other areas.

5.    <u>No Third Party Beneficiary</u>.

The Company Board acknowledges that all advice (written or oral) given by GlassRatner to the Board in connection with this engagement is intended solely for the benefit and use of the Board in considering the matters to which this engagement relates. The Board agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without GlassRatner's prior approval (which shall not be unreasonably withheld), except as required by law.

6.    <u>Conflicts</u>.

GlassRatner is not currently aware of any relationship that would create a conflict of interest with the Company or its Board or those parties-in-interest of which you have made us aware. Because GlassRatner is a consulting firm that serves Companies on an international basis in numerous cases, both in and out of court, it is possible that GlassRatner may have rendered services to or have business associations with other entities or people which had or have or may have relationships with Company and/or its board members, including its creditors.



CONFIDENTIAL

Mr. Dan Briggs, CEO
**DC Solar Solutions, Inc. - GlassRatner**
January 24, 2019
Page | 6

7.    Confidentiality / Non-Solicitation.

The CRO and GlassRatner shall keep as confidential all non-public information received from Company and its Board in conjunction with this engagement, except (i) as requested by the Board or its legal counsel; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.

8.    Indemnification.

The Company and its Board shall indemnify GlassRatner and the CRO to the same extent as the most favorable indemnification it extends to its officers or directors, whether under the Company's bylaws, its certificate of incorporation, or otherwise, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to GlassRatner and the CRO. The CRO shall be covered as an officer under the Company's existing director and officer liability insurance policies if such policy is in effect and the Company shall also maintain any such insurance coverage for the CRO for a period of not less than two years following the date of the termination of such officer's services hereunder. The attached indemnity provisions are incorporated herein and the termination of this agreement or the engagement shall not affect those provisions, which shall survive termination. The provisions of this section 8 are in the nature of contractual obligations and no change in applicable law or the Company's charter, bylaws, or other organizational documents or policies shall affect the CRO's or GlassRatner's rights hereunder.

9.    Director & Officer Liability Insurance. Company shall provide and maintain Director and Officer insurance policies reasonably acceptable to GlassRatner.

10.    Miscellaneous.

This Agreement shall (together with the attached indemnity provisions) be: (a) governed and construed in accordance with the laws of the State of California, regardless of the laws that might otherwise govern under applicable principles of conflict of laws thereof; (b) incorporates the entire understanding of the parties with respect to the subject matter thereof; and (c) may not be amended or modified except in writing executed by each of the signatories hereto. Company and its Board and GlassRatner agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any



CONFIDENTIAL

Mr. Dan Briggs, CEO
**DC Solar Solutions, Inc. - GlassRatner**
January 24, 2019
Page | 7

matter relating to or arising out of the performance or non-performance of the Company, its Board or GlassRatner hereunder.

11.    Notices.

Notices to the Consultant shall be sent to the office address and by email in the signature block below.

12.    Conclusion.
If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

**GLASSRATNER ADVISORY & CAPITAL GROUP, LLC**

Seth R. Freeman, CIRA, CTP
Senior Managing Director

San Francisco Office
425 California Street, Suite 900
San Francisco, CA  94556

Tel:  415-839-9280
Mob:  925-899-1550
sfreeman@glassratner.com

[Signature page follows]



<u>CONFIDENTIAL</u>

Mr. Dan Briggs, CEO
**DC Solar Solutions, Inc. - GlassRatner**
January 24, 2019
Page | 8

**Accepted and Agreed:**

**DC SOLAR SOLUTIONS, INC. and its AFFILIATES**

By: _____
          Authorized Member of Board of Directors

_____          _____
                            Name                                                    Date

_____
                            Title



CONFIDENTIAL

Mr. Dan Briggs, CEO
**DC Solar Solutions, Inc. - GlassRatner**
January 24, 2019
Page | 9

## ADDITIONAL INDEMNITY PROVISION

DC Solar Solutions, Inc. and Affiliates (the "Company" or "Company"), to the extent permissible under California State law, agrees to indemnify and hold harmless each of GlassRatner Advisory & Capital, LLC ("GlassRatner"), GlassRatner's shareholders, officers, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others (including employees of GlassRatner, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted from such Indemnified Party's gross negligence or willful misconduct. Company and its Board also agree that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to Company and its Board for or in connection with the engagement of GlassRatner, except to the extent that any such liability for losses, claims, damages, liabilities or expenses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted from such Indemnified Party's gross negligence or willful misconduct. Company and its Board further agree that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

_____
Initials



## ACCEPTANCE

If the foregoing proposal is acceptable to you, please sign in the space indicated.  Please also send a copy of your corporate resolution authorizing our engagement.

**DC SOLAR SOLUTIONS**

_____          1/25/19
Mr. Dan Briggs, CEO                              Date

**Retainer Wiring Instructions**

**Please wire the retainer as follows:**

Wells Fargo Bank
Woodland Hills, CA
Beneficiary: BRGR Revenue Depository
ABA# 121 000 248
Account Number: 4208 220418
Reference:  DC Solar Solutions-Freeman
Swift code for incoming international wires in US$: WFBIUS6S
Swift code for incoming international wires in foreign currency: WFBIUS6W

**LIST OF AFFILIATED ENTITIES**

Double Jump, Inc.

Dora Dog Properties, LLC

Dog Blue Properties, LLC

Brandy Boy Properties, LLC

475 Channel Road, LLC

Park Road, LLC

140 Mason Circle, LLC

DC Solar Solutions, Inc.

DC Solar Distribution, Inc.

DC Solar Freedom, Inc.

# EXHIBIT 2

# EXHIBIT 2

# Seth R. Freeman, CTP, CIRA
**Senior Managing Director**
**GlassRatner Advisory & Capital Group, LLC**

### PROFESSIONAL BIO

Seth R. Freeman, CTP, CIRA is the Senior Managing Director of the San Francisco office of GlassRatner Advisory & Capital Group, LLC. He is a Bankruptcy, Insolvency and Restructuring Consultant, Crisis and Turnaround Manager and Asset Manager with over 30 years of diverse consulting experience including financial advisory, operational and financial restructuring, controlled wind-downs, transaction management, arranging new financing, fiduciary, litigation support; and cross-border due diligence, insolvency and debt resolution, market-entry strategies, compliance, fraud investigation and recovery and complex dispute negotiation. His practice also includes serving as independent advisor to significant investors and directors of companies undergoing change.

Seth is an active member of the Bankruptcy community. He is a Director of the Bay Area Bankruptcy Forum and a member of the CTP Certification Oversight Committee of the Turnaround Management Association. He is a Certified Insolvency & Restructuring Advisor and a Certified Turnaround Professional. Seth also served as Chairman of the Editorial Board of the *TMA Journal of Corporate Renewal* and a director and officer of the TMA Northern California Chapter.

Seth's clients include debtors, creditors, investors, lenders, banks, venture and private equity managers, family offices, boards and government agencies and their attorneys and other professionals. His roles have included court-appointed Financial Advisor, CRO, interim CEO, interim CFO, interim/replacement general partner, Assignee for the Benefit of Creditors (ABC), forensic investigator and expert; and fiduciary in a variety of complex matters and cases involving both private and listed companies across a wide range of industries.

Industry experience includes manufacturing, consumer products, apparel, distribution, startups, technology, software, IT services, industrial products, pharma, food and beverage, agriculture, hospitality, investment management, private equity, venture capital, professional services, banks and lenders, shipping, real estate and retail.

His background includes addressing the unique factors of projects involving the use of investment tax credits including solar, historic investment tax credits and other tax attributes.

Over the past several years, Seth has developed expertise in the EB-5 investment immigration program to assist groups of foreign investors and their attorneys in EB-5 related fraud, mismanagement and bankruptcy, as well as assessing "redeployment" of "at-risk" investor funds and compliance required under USCIS regulation.

1

Seth has gained experience in all aspects of real estate investment, asset management, development, finance, lending, distressed asset and debt portfolios and investment banking across most property-types with an aggregate value exceeding $1 Billion, including client projects in the U.S., Mexico, Guatemala and Belize.

Prior to joining GlassRatner, Seth was Senior Managing Director of an international restructuring, insolvency and emerging markets advisory and asset management firm, he co-founded in 1996, where in addition to delivering consulting services he has served as investment manager of funds investing in India.  During his career, he served as the president and chief operating officer of companies investing in distressed industrial companies, managing, and advising on structuring, development and investing in distressed and underperforming real estate, including investment tax credit oriented projects.

Seth holds an MBA in International Management from Thunderbird School of Global Management and a Bachelor of Arts in Management from St. Mary's College of California. He is a Certified Insolvency & Restructuring Advisor (CIRA) and a licensed CA real estate broker and general building contractor.  Seth has appeared over 120 times on Bloomberg TV and CNBC TV on global and cross-border business and investment issues.  He has been an invited speaker and moderator at leading MBA programs including Wharton, Chicago Booth, Harvard, NYU Stern, Columbia, Georgetown and UC Berkeley Haas; and at numerous industry and professional conferences, including AIRA and TMA.

***Examples of Seth's engagement experience includes:***

- Appointed Financial Advisor by the German parent to execute the sale and liquidation of assets of its insolvent, wholly-owned U.S. subsidiary engaged in solar and electric vehicle charging stations.  Appointed liquidating trustee for disposition of excluded assets.

- Assignee and Manager of Fandor ABC, LLC, the Assignee of Our Film Festival, LLC, under a California Assignment for Benefit of Creditors, the leading streaming movie website for independent films and documentaries with 4,000 titles and extensive proprietary IP.  Leading the sale and disposition of assets to maximize recovery.

- Engaged as Financial Advisor to secured lender of a large Washington dairy in Chapter 11.  Advising institution on Debtor's budgets and reporting, viability, restructuring options and valuation.  Serve as expert witness.

- Appointed Assignee by Board of Directors under a California Assignment for Benefit of Creditors by the board of Healthy Planet Products, Inc., an AMEX listed cause-oriented graphics and printed products and gift manufacturer with national distribution to over 1,000 retailers and marketing licenses from major nature and wildlife conservation organizations such as World Wildlife Fund (WFF).  As interim CEO, Seth managed an "operating ABC"

2

over a period of two years to maximize inventory and IP disposition values, distributions to creditors and retention of employees.

- Appointed Interim CEO/CRO of an award-winning educational toy company manufacturing in California facing severe illiquidity due to bankruptcies of concentrated mall chain store customers and direct cost accounting and dysfunctional board management issues.  Seth negotiated forbearance agreements, performed detailed customer and cost analysis and led an extensive product line redesign, repositioning, and expanding the product line. In China he sourced and implemented a comprehensive off-shoring strategy with turn-key production and packaging. The company's new cost structure and products attracted new working capital financing and enabled large, profitable holiday sales leading to positive cash and sale of the company.

- Financial and strategic development advisor to a middle market mobility software products and IT services company with Silicon Valley headquarters and production in India, serving U.S. multinationals, healthcare organizations, U.S. government agencies and large domestic Indian customers.

- Initially engaged by Chairman and CEO for out-of-court assistance for a large Texas based multi-state integrated cattle company.  Seth negotiated standstill agreements with multiple fatigued secured lenders intent on seizing collateral, including cattle. He resolved complex inter-company transfer accounting and cross-collateral issues. To accomplish a financial restructuring, he engaged counsel and led its Chapter 11 planning process.  He was engaged as court-appointed Financial Advisor/CRO in 4 related Chapter 11 cases, managing the Chapter 11 process that enabled a successful private capital recapitalization, 100% recovery for secured lenders and a structured dismissal.

- As the Managing Agent and financial advisor for a group of unrelated US investors in who invested in an Argentine airline, Seth's forensic examination and in-country due diligence and tracing revealed the existence of multi-year fraud and Ponzi scheme. Seth initiated and managed litigation in US and Argentina, provided litigation support and liaised with law enforcement agencies.  Seth obtained a $4.3m Federal District Court fraud and exemplary damages jury verdict against the U.S. managing member of the Illinois aircraft renovation and leasing companies with aircraft leased to Argentine airlines.

- Prepared a detailed expert financial and forensic report to document IRS treatment of Madoff-type investment fraud losses for victims of the Ponzi scheme.

- Appointed by investors to serve as replacement LLC Manager of 3 aircraft leasing companies owning Boeing 737 aircraft during a multi-year process.

- Appointed Interim President of Dane Sea Lines, an insolvent listed Greek roll-on/roll-off Piraeus-Rhodes ferry line with three ships and 300 union employees.

- Engaged as Financial Advisor and subject matter expert for the due diligence, sale strategy and execution of a $1 Billion portfolio of distressed assets of intervened Mexican banks.

- Extensive investment due diligence, valuation and investment analysis of listed and private companies in U.S., Mexico, China, India and Vietnam.

3

# EXHIBIT 3

# EXHIBIT 3

1  CANDACE C. CARLYON, ESQ.
   Nevada Bar No. 2666
2  TRACY M. O'STEEN, ESQ.
   Nevada Bar No. 10949
3  CLARK HILL PLC
   3800 Howard Hughes Parkway, Suite 500
4  Las Vegas, NV 89169
   Telephone:    (702) 862-8300
5  Facsimile:    (702) 862-8400
   CCarlyon@ClarkHill.com
6  TOSteen@ClarkHill.com
   *[Proposed] Counsel for Debtors in Possession*

7
                    **UNITED STATES BANKRUPTCY COURT**
8
                           **DISTRICT OF NEVADA**
9

10  In re                          Case No.: BK-19-50104-btb
                                    Chapter 11
11  DOG BLUE PROPERTIES, LLC
                                    Proposed Joint Administration with:
12                   Debtor.

| 19-50102-btb | Double Jump, Inc. |
|---|---|
| 19-50103-btb | Dora Dog Properties, LLC |
| 19-50105-btb | Brandy Boy Properties, LLC |
| 19-50106-btb | 475 Channel Road, LLC |
| 19-50108-btb | Park Road, LLC |
| 19-50109-btb | 140 Mason Circle, LLC |
| 19-50130-btb | DC Solar Solutions, Inc. |
| 19-50131-btb | DC Solar Distribution, Inc. |

17

18                                 Hearing Date:
                                    Hearing Time:
19

20        **[PROPOSED] INTERIM ORDER (I) AUTHORIZING THE RETENTION OF
          GLASSRATNER ADVISORY & CAPITAL GROUP LLC TO PROVIDE CHIEF
21        RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL, (II)
          DESIGNATING SETH R. FREEMAN AS DEBTORS' CHIEF RESTRUCTURING
22        OFFICER EFFECTIVE AS OF THE PETITION DATE, AND (III) SETTING A FINAL
                                    HEARING**

23        The Court having reviewed and considered the Debtors' Emergency Motion (the

24  "Motion") for Entry of Interim and Final Orders (i) Approving the Retention and Employment of

25  GlassRatner Advisory & Capital Group LLC ("GlassRatner") to Provide the Debtors with a Chief

26  Restructuring Officer ("CRO") and Certain Additional Personnel (the "GlassRatner Personnel"),

27  and (ii) Designating Seth R. Freeman, CIRA, CTP as CRO Effective as of the Petition Date, (iii)

28

1    Setting a Final Hearing on the Motion, and (iv) Granting Related Relief, as supported by the

2    declaration of Seth R. Freeman filed in support of the Motion (the "<u>Freeman Declaration</u>"), along

3    with the First Day Declaration[1]; and the Court having held an emergency hearing on the Motion at

4    the above captioned date and time (the "<u>Hearing</u>"); and it appearing that the relief requested in the

5    Motion is in the best interest of the Debtors' estates, creditors, and all parties-in-interest; and in

6    light of the circumstances and the nature of the relief requested, and after due deliberation and

7    sufficient cause appearing:

8         **IT IS HEREBY ORDERED**:

9         1.    The Motion is GRANTED as set forth herein on an interim basis.

10        2.    The Debtor is authorized to retain and employ GlassRatner  pursuant to the terms

11   and conditions of the Engagement Agreement effective as of the Petition Date

12        4.    The Debtors shall compensate and reimburse GlassRatner in accordance with the

13   payment terms set forth in the Engagement Agreement for all services rendered and expenses

14   incurred in connection with the Debtor's case, upon Court approval.  Debtor shall also serve the

15   Official Committee of Unsecured Creditors, if formed, and the Office the United States Trustee,

16   with copies of GlassRatner's applications for compensation when filed.

17        7.    Pursuant to Section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of

18   GlassRatner incurred pursuant to the Engagement Agreement shall be administrative expenses of

19   the Debtors' estates; however, the Debtors are required to obtain Court approval before payment of

20   any invoices submitted to Debtors by GlassRatner.

21        8     The Debtors and GlassRatner are authorized to take all actions necessary to

22   effectuate the relief granted pursuant to this order in accordance with the Motion and the Services

23   Agreement.

24        . . .

25        . . .

26        . . .

27

28   _____
     [1] All capitalized terms not otherwise defined herein have the meaning ascribed them in the Motion.

1    9.    A final hearing is scheduled on the Motion for _____ ___, 2019 at __:--.m.

2        **IT IS SO ORDERED.**

3    Submitted by:                                    Approved:
     CLARK HILL PLC                                   OFFICE OF THE U.S. TRUSTEE
4

5    CANDACE C. CARLYON, ESQ.                          JARED DAY, ESQ.
     Nevada Bar No. 2666                               300 Booth Street
6    TRACY M. O'STEEN, ESQ.                            Reno, Nevada 89509
     Nevada Bar No. 10949                              Telephone:    AuthorOfficeGeneralNo1
7    3800 Howard Hughes Parkway, Suite 500
     Las Vegas, NV 89169
8    Telephone:    (702) 862-8300
     Facsimile:    (702) 862-8400
9    CCarlyon@ClarkHill.com
     TOSteen@ClarkHill.com
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28